Hon. Neil D. Levin Formal Opinion Superintendent No. 96-F4 Banking Department 2 Rector Street New York, N Y 10006
Dear Superintendent Levin:
Your counsel has requested a formal opinion from this office regarding the priority of liens on reverse mortgage loans made pursuant to Banking Law § 6-h. Under Real Property Law §§ 280 and 280-a, "the priority of the lien of a reverse mortgage shall date from the recording of the reverse mortgage irrespective of the date of any advance of reverse mortgage loan proceeds" (Real Property Law §§ 280[5],280-a[5]), "or the date by which an authorized lender shall be entitled to shared appreciation or accrued but unpaid interest" (id., § 280-a[5]). In contrast, the statute establishing the priority of liens of a credit line mortgage, which was amended in 1993 to include reverse mortgages in the definition of credit line mortgage, dates the liens to the time the mortgage was entered into but only as to those advances made within twenty years of the date of its initial recording. Id., § 281(2).
You inquire whether the priority of reverse mortgage liens
is governed by sections 280 and 280-a of the Real Property Law, or whether their priority is subject to the twenty year limitation contained in Real Property Law § 281. It is our opinion that the priority of such liens dates from the recording of the reverse mortgage loan irrespective of when the actual advances are made and that the twenty year limitation set forth in Real Property Law §281 does not apply.
First authorized by Chapter 789 of the Laws of 1984, reverse mortgage loans were designed by the Legislature to serve as a vehicle through which homeowners who are over 60 years of age and who are "house rich, but cash poor" could borrow on the equity of their homes without having to forfeit possession or ownership. See, Bill Jacket, L 1993 Ch 613; seealso, New York State Senate Research Service, "Issues in Focus", 92-67; 1993 Summary of Legislation 5-13 to 5-18.[1] As defined by section 6-h, reverse mortgages must conform to the provisions of RPL §§ 280 or 280-a, or to the requirements of the Federal Housing Administration's home equity conversion mortgage insurance demonstration program for so long as such program exists as provided for in section 1715Z-20 of Title 12 of the United States Code. See, Banking Law § 6-h; seealso, Practice Commentaries, RPL § 280. A reverse mortgage loan made under either RPL §§ 280 or 280-a may be a "term reverse mortgage loan" (any reverse mortgage loan that has a fixed time to maturity) or a "tenure reverse mortgage loan" (a reverse mortgage loan that does not have such a fixed term but rather matures solely upon a contingent event). Through a reverse mortgage a lender agrees to provide a stream of payments to a borrower either for his or her life, for a term of years, or until the occurrence of a specific event (such as the sale of the home).[2]
The amounts and times of the advances may vary according to the agreement between the bank and the borrower, but they are usually calculated by using standard annuity tables based upon the value of the home and the age of the homeowner at the time that the mortgage is contracted for. At the end of the loan term, the borrower is responsible for the repayment of the loan, usually from the proceeds of the sale of the house. See, Bill Jacket, L 1993 Ch 641.
In contrast to a reverse mortgage, a credit line mortgage is a mortgage or deed of trust, other than one made pursuant to a building loan contract, which states that it secures indebtedness under a note, credit agreement, or other financing agreement that reflects the fact that the parties reasonably contemplate entering into a series of advances, payments, and readvances, and that limits the aggregate amount at any time outstanding to a maximum amount specified in the mortgage or deed of trust. See, Real Property Law § 281; Tax Law §253-b(2). Chapter 641 of the Laws of 1993 amended section 281 to include a reverse mortgage loan in the definition of a credit line mortgage, raising the issue whether the twenty year limitation applies.
Since the inception of reverse mortgages in 1984, authorized banking institutions have been hesitant to offer reverse mortgages to people over the age of 60. As your letter of inquiry notes, one of the specific impediments was lender uncertainty as to the priority of the reverse mortgage lien, given that advances are made throughout the life of the loan. The 1993 amendments to Real Property Law §§ 280 and 280-a were designed precisely to remedy this concern, by pegging the priority of the lien to the date the reverse mortgage is recorded.
Chapter 613 of the Laws of 1993 added a new subsection 5 to Real Property Law § 280, stating that, notwithstanding any other provisions of law, the priority of liens on reverse mortgage loans to persons aged 60 and older "shall date from the recording of the reverse mortgage irrespective of the dateof any advance of reverse mortgage loan proceeds". Real Property Law § 280(5) (emphasis added). A subsection 5 was added to section 280-a which provided similar priority language for reverse mortgage loans made to persons aged 70 and older. Real Property Law § 280-a(5).
Clearly, the legislative intent behind Real Property Law §§ 280 and280-a was to remove impediments to lender participation in reverse mortgage loan programs and allow increased flexibility in the development of reverse mortgage loan products. Any advances by the mortgagee receive a priority of lien, limited only by the terms of the agreement. See, footnote 1, supra.
Under sections 280 and 280-a, the lender obtains a priority of liens on reverse mortgage loans "irrespective of the date of any advance" and "notwithstanding any inconsistent provision of law". Therefore, any provision of law limiting or inconsistent with these provisions is inapplicable. This conclusion implements the legislative scheme and statement of legislative intent to encourage banking organizations to make reverse mortgage loans, in some cases for the life of the borrower. In that subdivision two of section 281 limits the priority of liens of credit line mortgages to loans made within twenty years of the recording of the credit line mortgage, that provision is inconsistent with the above provisions of sections 280 and 280-a and, therefore, is inapplicable to reverse mortgage loans made under those sections.
Sincerely,
DENNIS C. VACCO, Attorney General
[1] Section 6-h of the Banking Law and Paragraph (s) of subdivision 1 of section 14 of the Banking Law, as added by L 1984 Ch 789 and as amended by L 1993 Ch 613, authorize reverse mortgage loans made by banking organizations and licensed mortgage bankers.
[2] The proceeds of a reverse mortgage loan would be paid out to the mortgagor in periodic installments, helping the mortgagor meet some of the expenses of remaining in the home such as real property tax payments, utilities, health care, and maintenance costs.